UNITED STATES, Appellee

v

LEROY ST. F. DAVIS, Private First Class,
U. S. Army, Appellant

14 USCMA 607, 34 CMR 387

No. 17,452

June 19, 1964

Captain Clifford B. Hearn, Jr., argued the cause for Appellant, Accused. With him on the brief were Colonel Joseph L. Chalk and Captain Daniel H. Benson.

Captain John C. Cortesio, Jr., argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel Francis M. Cooper.

Opinion of the Court

FERGUSON, Judge:
Tried before a general court-martial convened by the Commanding General, V Corps, at Frankfurt/Main, Germany,

607

the accused was found guilty of assault whereby grievous bodily harm was intentionally inflicted, in violation of Uniform Code of Military Justice, Article 128, 10 USC § 928. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction. Intermediate appellate authorities have affirmed. Davis was tried in common with two other soldiers, Johnson and Smith, and we granted his petition for review solely to determine whether such was proper under the circumstances.

Private First Class Johnson was charged with assault with a dangerous weapon upon a Private First Class Edward Lewis, Jr., and intentional infliction of grievous bodily harm upon Specialist Four Frederick E. Brooks. He was found guilty only of the charge regarding Brooks. Private First Class Smith was charged with assaulting Private First Class Rudolph W. Moses with a dangerous weapon. He was convicted of the lesser offense of assault consummated by a battery. Davis, as noted above, was convicted of aggravated assault upon Private First Class Jones.

The evidence tends to establish that Brooks, Moses, and Jones, on the night of June 29, 1963, were sitting together in the "pit" at the Laternchen Bar, in Rueckingen, Germany. The "pit" was an area of this establishment lower in level than the balance of its accommodations and surrounded by a railing approximately three feet in height. Jones left his companions and visited the latrine, where he observed Davis cleaning his fingernails with a knife having a blade approximately three and one-half inches long. Davis looked at him in such a manner that he was led to inform Brooks and Moses to expect trouble.

A few minutes later, Smith appeared and began to stare at Jones. Jones asked Smith at what he was looking, and Smith replied that he was entitled to look. Smith then departed, returned in a few minutes, and grabbed Jones. The men fought, with Jones knocking Smith down. He then backed up toward Davis, who stabbed him and attempted to pass his knife to another man.

The knife fell to the floor, and the fighting became general. Jones informed Moses he had been stabbed, and Moses grabbed Davis. Smith then grappled with Moses, and Brooks swung a chair at Smith. Johnson, the third accused, intervened and struck Brooks with a bottle, which shattered and caused multiple lacerations.

Jones managed to remove Smith from Moses' back and ran outside. He and Brooks, who was bleeding badly, were taken to the hospital. Moses, upon leaving the bar, discovered that he, too, had been stabbed.

According to Private First Class Lewis, accused Smith sought to borrow a knife from him prior to fighting with Jones. Smith, during the fight, drove Jones back on Davis, who stabbed him. He and Moses attempted to grab Davis, and he was struck with a chair. He also observed Brooks being hit by Johnson.

Accused Smith testified that he came to the Laternchen alone on the evening in question. He spoke to Brooks and Moses and looked at Jones, who inquired as to the object of his stare. He told him he was looking at him, left, drank a Coca-Cola, and returned. Jones asked him if anything was wrong and suddenly struck him. The two men wrestled together and fell to the floor. When Smith arose, he saw that a "free-for-all" was in progress and immediately departed.

Accused Johnson declared that he was on the upper level of the bar and was unable to observe the fighting because of the crowd. He saw Moses lift a chair, and reached through the crowd in an unsuccessful attempt to grab it. Someone broke a beer bottle, and the crowd scattered. He did not strike Brooks with anything.

Accused Davis stated that he was intoxicated on the night of June 29 and could not fully recall what had transpired. However, after he had been at the Laternchen approximately ten minutes, a fight occurred in the pit area. He saw Jones and Smith wrestling on

608

the floor and was himself simultaneously attacked by Moses and Brooks. He used only his hands. While he had had a knife earlier in the evening, he had loaned it to a friend and could not recall its being returned. He specifically denied stabbing Jones.

At the outset of the trial, the law officer held an out-of-court hearing during which he inquired into the circumstances surrounding the common trial of the three accused. He ascertained that each was satisfied with the services of their single counsel and proffered to each the services of an individual attorney. He was informed by each accused that he was satisfied to be represented by the appointed counsel and was aware of the latter's duty with respect to the other defendants. Each man refused the proffer of another attorney and knew of no reason why he should not be tried with his fellows. In addition, counsel assured the law officer he had fully advised the accused of their respective individual rights, and, upon further inquiry, the military judge was also told that no reason existed to believe that any inconsistent defense would be presented.

At the beginning of his final instructions to the court members, the law officer advised them:

"However, the first thing I want to point out to you is, each of these accused, each one of them, is being tried as an individual, just as though the other two men were not sitting there with him. Each one is an individual in his own right, he's being tried on a separate specification, and the only reason there are three here is because the three separate acts occurred at the same time and about the same place. Therefore, of course, each one must have a separate finding made as to each individual accused to each charge that applies to him."

Thereafter, he carefully delineated the charges against each accused, tailoring his advice on each element thereof, and on the lesser included offenses placed in issue. In addition, he explained the possible effect of Davis' intoxication as a defense; the law of self-defense as it affected Johnson's criminal liability for assaulting Lewis; and concluded with a precise explanation of the meaning of circumstantial evidence and the doctrine of reasonable doubt.

The common trial of military offenders by court-martial is permissible if "two or more persons are ■■■■■■■■ ■ charged with the commission of an offense or offenses which, although not jointly committed . . . , were committed at the same time and place and are provable by the same evidence." Manual for Courts-Martial, United States, 1951, paragraph 33*l*; United States v Bodenheimer, 2 USCMA 130, 7 CMR 6; United States v Smith, 2 USCMA 312, 8 CMR 112; United States v Alvarez, 10 USCMA 24, 27 CMR 98; United States v Williams, 10 USCMA 33, 27 CMR 107. The Manual concept is comparable to and, indeed, is based upon the procedure followed in the ordinary United States court regarding the trial of criminal defendants in common. Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 52; United States v Bodenheimer, supra; Federal Rules of Criminal Procedure, Rules 8, 13. Such permit a common trial if the offenses are of the same or similar character, are based upon the same acts or transaction, or involve crimes which are connected together or involve parts of a common scheme or plan. Rules 8, 13, supra; District of Columbia v Hunt, 163 F2d 833 (CA DC Cir) (1947); McElroy v United States, 164 US 76, 41 L ed 355, 17 S Ct 31 (1896).

Common trials cast a heavy burden upon counsel representing the accused and the law officer to see ■■■■■■ ■ that no individual's rights are prejudiced by the fact that he is being tried with others, either by means of inconsistent defenses, evidence admissible as to some defendants but not as to others, or by other circumstances which arise solely as the result of the multiple nature of the proceedings. As was noted in Schmeller v United States, 143 F2d 544 (CA6th Cir) (1944), at page 550:

"The gain in speed and ecomony

of trial which results from the consolidation of criminal cases is often offset by the disadvantage at which the defendants are placed by the consolidation. The trial court has the obligation of safeguarding the rights not only of the Government, but also of the individual accused, and must see to it that such rights are not jeopardized by the consolidation for trial of numerous cases."

Turning to the record before us, we note that the law officer, at the very outset of the proceedings, commendably inquired into the possibility of any prejudice flowing from the nature of the trial. He offered each accused the services of separate defense counsel, ascertained that all were satisfied with the joint representation afforded them, and determined that, insofar as anyone knew, there would be nothing presented because of the common trial which would embarrass any single defendant in the presentation of his case. Following such colloquy, no motion for severance was presented to the law officer, nor was there the slightest hint of dissatisfaction with the order that Davis, Johnson, and Smith be tried together. United States v Bodenheimer, supra; United States v Williams, supra. And, viewed in the context of the evidence, such action by defense counsel is not surprising.

The transcript reveals a series of assaults by the three accused upon different victims which constituted "offenses . . . committed at the same time and place and . . . provable by the same evidence." Manual, supra, at page 44. There is nothing to indicate any inconsistency in the accused's defenses or the slightest unfairness in their joinder. To the contrary, the evidence was simple and uncomplicated, and the separate defenses of each accused in nowise infringed upon the rights of any other party. Cf. United States v Bodenheimer, supra. Moreover, the law officer went to great pains to caution the court-martial to consider the guilt of each accused separately and to submit their respective positions properly to its members. In short, we can find no factor in this record which tends to indicate either that it was erroneous to order a common trial in this case or that any prejudice resulted therefrom to any of the parties. We conclude, therefore, that the assignment of error upon which the petition for review was granted must be overruled.

We commend the law officer, a member of the Army Judiciary Program, for his thoughtful attention to the dangers which flow from proceedings involving a number of defendants. Such action, so timely taken, forestalls the possibility of error and insures a fair and impartial hearing to all concerned.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.